FILED
FEB 23 2010

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

BLUE SKY AVGROUP, LLC,
A Florida Limited Liability Company,

Plaintiff,

v.

EPIC AIR LLC, a Delaware Limited Liability Company; AIRCRAFT COMPLETION SERVICES, LLC, a Delaware Limited Liability Company; and AIRCRAFT INVESTOR RESOURCES, LLC, a Nevada Limited Liability Company, Richard Schrameck, Jeff Sanders, and Michael Shealy,

Defendants,

No. 3:09-628-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Opinion and Order*

Plaintiff, Blue Sky Avgroup, LLC, ("Blue Sky") asserts the following claims against Richard

Schrameck, Jeff Sanders, and Michael Shealy (collectively the "Individual Defendants"): breach of fiduciary duty; conversion; and conspiracy to commit conversion. Blue Sky moves the court to transfer the claims pending against the Individual Defendants, as well as the pending motion for contempt directed against the non parties ER1, LLC ("ER1") and Edward M. Nigro ("Nigro"), to the United States Bankruptcy Court having jurisdiction over the bankruptcy of Aircraft Investor Resources, LLC, U.S. Bankruptcy Court Case No. 09-38458-rld11. For the reasons that follow, Blue Sky's motion to transfer its claims against the Individual Defendants,[1] as well as the pending motion for contempt directed against ER1 and Nigro, is DENIED.

*Background*

Defendant Richard Shrameck has a membership interest of approximately 42% in Epic Air, LLC, ("Epic"), Aircraft Completion Services, LLC, ("ACS"), and Aircraft Investor Resources, LLC, ("AIR")(collectively the "Companies"). (Third Am. Compl. ¶ 3.) Shrameck also served as the Managing Member of the Companies until July of 2009. (Third Am. Compl. ¶ 3.) Defendant Jeff Sanders holds a membership interest of approximately 47% in the Companies. (Third Am. Compl. ¶ 4.) Defendant Michael Shealy holds a membership interest of approximately 11% in the Companies. (Third Am. Compl. ¶ 5.)

On April 30, 2008, Blue Sky and Epic entered into an Airframe Purchase Agreement (the "Purchase Agreement") for the purchase of an Epic Airframe Kit. (Third Am. Compl. Ex. A at 13.) The purchase price for the Epic LT Basic Airframe was $800,000 payable to Epic in five installments over 120 days, starting with a payment due 90 days prior to airframe production as notified by Epic

---

[1]Each of the Individual Defendants have consented to the jurisdiction of a magistrate pursuant to 28 U.S.C. § 636.

and ending with the final payment one month after airframe production began and prior to delivery to the customer build center or carrier. (Third Am. Compl. Ex. B at 18.) On April 30, 2008, Blue Sky and ACS entered into a Completion Assistance Agreement (the "Completion Agreement") for the services necessary to construct the Epic Airframe Kit. (Third Am. Compl. Ex. C at 19.) The cost for the construction was $650,000 payable to ACS in five installments. (Third Am. Compl. Ex. C at 19.)

Included in the cost of the Completion Agreement were additional equipment and parts including, but not limited to, a new Pratt Whitney PT6-67A engine (the "Engine"). (Third Am. Compl. Ex. C at 20.) Blue Sky agreed to pay ACS an additional $75,000 for an accelerated build. (Third Am. Compl. Ex. D at 21.) In addition, various accessories were added over the course of the build for an additional cost of $319,800. (Third Am. Compl. Ex. E at 22.) The total cost of the Epic Airframe Kit was $1,844,800. (Third Am. Compl. Ex. E at 22.) As of December 18, 2008, Blue Sky had paid Epic a total of $1,601,960. (Third Am. Compl. Ex. E at 22.)

In late January, 2009, Rick Lucibella, a member of Blue Sky, emailed Dave Clark, Senior Controller for Epic, and inquired about the delivery schedule for the Engine. (Third Am. Compl. Ex. F at 23.) Clark indicated that Epic expected the Engine to ship from Pratt in mid-April 2009. (Third Am. Compl. Ex. F. at 23.) On March 4, 2009, Schrameck wrote Lucibella stating, among other things, that Epic was struggling with cash flow. (Third Am. Compl. Ex. G at 24.) Schrameck indicated that he needed Lucibella's support to keep Epic's cash flow and that "[i]f a few more of our customers get behind their payment schedule we are in BIG trouble." (Third Am. Compl. Ex. G at 24.) On March 5, 2009, Lucibella emailed Schrameck and advised that he would wire the sum of $242,800 to Epic's account as soon as he received assurance that the Engine would ship from

Pratt on April 23. (Third Am. Compl. Ex. H at 25.) Schrameck forwarded to Lucibella an email he received from Luc Landy, Sr. Marketing Account Manager, Business Development, for Pratt & Whitney indicating that "we are looking for 17-23-25 April and 09-11-16-28 May for the engine delivery schedule." (Third Am. Compl. Ex. H at 26.) In reliance on Schrameck's assurance that the Engine would be shipped in April or May, 2009, Blue Sky forwarded the final payment of $242,840 to Epic. (Third Am. Compl. ¶ 20.) On May 18, 2009, Epic notified Blue Sky that it was unable to provide additional information in connection with the delivery of the Engine. (Third Am. Compl. ¶ 21.) Blue Sky is unaware how, or if, Epic has paid for the Engine or whether the Engine has been acquired and installed in another aircraft. (Third Am. Compl. ¶ 23.) Epic has been unwilling to account for the propeller and avionics ordered for Blue Sky's aircraft. (Third Am. Compl. ¶ 26.)

The Companies held custodial funds belonging to Blue Sky in the approximate amount of $932,000. Blue Sky alleges that defendant Shrameck had complete control over the finances of the Companies as its Managing Member and unilaterally determined the payment of all expenses. Blue Sky contends defendant Shrameck converted to his own use a significant majority of the advanced funds, with the knowledge and acquiescence of defendants Sanders and Shealy. These alleged actions are the basis of Blue Sky's claims for breach of fiduciary duty, conversion, and conspiracy to commit conversion.

Prior to May 3, 2009, Blue Sky representatives made regular visits to the Companies' facility in Bend, Oregon, (the "Facility") to participate in the completion of the aircraft. The Facility is owned and operated by ER1 and located at the City of Bend Municipal Airport. ER1 is owned equally by Nigro, Inc. ("Nigro Inc.") and Quick-Turn Technologies, LLC ("Quick-Turn"). Nigro is the President and sole shareholder of Nigro Inc. while Schrameck is a member of Quick-Turn. ER1

leased the Facility to AIR and Quick-Turn (collectively "Tenants"). The Tenants used the Facility to manufacture Epic aircraft. Under the terms of the lease, the Tenants were obligated to pay monthly rent. In May 2009, the Tenants defaulted under the terms of the lease by not making rent payments. As a result, on or about July 27, 2009, ER1 took possession of the Facility, which at the time housed one completed aircraft and several partially completed aircrafts.

On August 12, 2009, this court ordered the Companies "not to transfer, sell, move, assign, liquidate or shed assets pending the court's ruling on plaintiff's pending motion to appoint receiver." While that motion seemingly was resolved by the parties' August 25, 2009, agreement to appoint a receiver, the receiver elected by Blue Sky declined the appointment. Almost immediately thereafter the Companies filed bankruptcy.

On September 4, 2009, ER1 notified the owners of the aircrafts located in the Facility that it would open the Facility and allow owners to remove their aircrafts. Before such removals took place, ER1 confirmed with AIR's attorneys that AIR did not claim any ownership interest in the aircrafts or related aircraft parts. On September 30, 2009, Blue Sky moved this court for entry of an Order to Show Cause why ER1, Nigro, and Jeffrey Sanders should not be held in contempt of this court order ("Show Cause Motion"). ER1 and Nigro have never been named as defendants in this action, but Blue Sky's motion seeks to include ER1 and Nigro under the umbrella of this court's August 25 and September 11, 2009, orders by alleging a relationship between ER1 and Nigro and individual defendant Shrameck.

Each of the Companies involved in this litigation have filed separate bankruptcy proceedings. On September 10, 2009, AIR filed a Chapter 11 bankruptcy in Nevada, which was transferred to Oregon, Case No. 09-38458-rld11. The bankruptcy court has appointed a Chapter 11 Trustee to

handle the case. Both remaining corporate defendants, Epic and ACS, filed Chapter 7 bankruptcies in Delaware (District of Delaware Case No. 09-12665-bls) and Nevada (District of Nevada Case No. 09-29581-bam) respectively. Pursuant to 11 U.S.C. § 362, the parties agree the case is currently stayed and the automatic bankruptcy stay will remain in effect with regard to all claims against the Companies. On November 12, 2009, Blue Sky moved for this court to transfer the claims pending against the individual defendants, as well as the Show Cause motion against ER1 and Nigro, to the United States Bankruptcy Court for the District of Oregon having jurisdiction over the bankruptcy of AIR.

*Legal Standard*

A. Motion to Transfer Claims Against the Individual Defendants to Bankruptcy Court.

Oregon District Court Local Rule 2100-1(a) invokes an automatic and ongoing reference of bankruptcies to the United States Bankruptcy Court: "This court hereby continues its reference to the bankruptcy judges of this district of all cases under Title 11 and all proceedings arising under Title 11 or arising in or related to cases under Title 11." Additionally, 28 U.S.C. § 157(a) provides: "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."[2] The Ninth Circuit's test for determining whether a matter is related to the bankruptcy is based on whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. *In re Boulders on the River*, 218

---

[2] In making a determination whether a matter is related to the bankruptcy proceeding, the court may take into account the allegations asserted by the various parties. *See Pacor, Inc. v. Higgins*, 743 F. 2d 984, 995 (3d Cir. 1984), *adopted by In Re Fietz*, 852 F. 2d 455, 457 (9th Cir. 1988) (explaining that alleged damages caused by work-related exposure to asbestos was not related to the bankruptcy of an impleaded defendant).

B.R. 528, 542 (D. Or. 1997). Thus, only the possibility that the district court litigation could effect the bankruptcy estate is required. *Id.* For example, a bankruptcy proceeding could be effected by an action in this court if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively), or in any way impact upon the handling and administration of the bankrupt estate. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), *adopted by In Re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988).

However, even if the matter is related to the bankruptcy, a transfer could present inefficiencies if the claims will ultimately be transferred back to the district court. This conclusion is supported by 28 U.S.C. § 157(e), which provides:

> If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

Therefore, if the right to a jury trial applies, express consent of all parties is necessary in order for a bankruptcy judge to conduct the trial.

B. Show Cause Motion Against ER1 and Nigro to Bankruptcy Court.

The District Court derives its contempt authority from 18 U.S.C. § 401, which provides that a court has the power to punish "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3). Criminal contempt sanctions also may be levied if the conduct is "of such character as to constitute a criminal offense[.]" 18 U.S.C. § 402. A court may hold a nonparty in contempt if the nonparty had notice of the order and either aids or abets the party to the action or is legally identified with the party to the action. *NLRB v. Sequioa Dist. Council of Carpenters*, 568 F.2d 628, 633 (9th Cir. 1977). The nonparty must also have the requisite knowledge that they are in fact aiding or abetting a violation of a court order. *FTC v. Productive*

*Marketing, Inc.*, 136 F. Supp. 2d 1096, 1104 (C.D. Cal. 2001).

*Discussion*

A. Motion to Transfer Claims Against the Individual Defendants to Bankruptcy Court.

Blue Sky contends that the court should transfer the claims against the Individual Defendants to the United States Bankruptcy Court having jurisdiction over AIR. Blue Sky argues that the bankruptcy court may exercise its referred jurisdiction under 28 U.S.C. § 157 because the claims against the Individual Defendants are related to the bankruptcy proceeding of AIR. Defendant Sanders argues that the claims are not adequately related to the bankruptcy proceeding. Defendants Shealy and Schrameck appear to concede that this action is related to the bankruptcy proceedings, but contend that the transfer should be denied based on their right to a jury trial on the state law claims asserted against them.

While Blue Sky's claims are factually related to the bankruptcy case, that alone is not enough to justify jurisdiction in the Bankruptcy Court because common issues of fact will not automatically render a civil proceeding related to the bankruptcy proceeding. *Pacor*, 743 F.2d at 994. For instance, in a case similar to the instant one, the District Court for the District of Columbia held that, where majority shareholders of a debtor in bankruptcy were accused of breaching fiduciary duties to minority shareholder, the claim was not related to the debtor's bankruptcy proceeding. *Abbey v. Modern Africa One, LLC*, 305 B.R. 594 (D.D.C. 2004). In reaching its conclusion, the *Abbey* court considered factors that are instructive here: no monetary award was sought from the debtor, the debtor was not ultimately responsible for any damages, determination of the claim did not adjust the debtor's rights or liabilities, and the claim did not concern any joint conduct of the debtor and the defendants. *Id.* at 602-03.

In contrast to *Abbey*, here a monetary award is being sought from the Companies. Because Blue Sky seeks monetary damages from the Companies, any recovery could infringe upon the Companies' property or assets or those of the bankruptcy estate. Thus, Blue Sky's recovery could directly affect the Companies' rights, liabilities, options, or freedom of action. Moreover, the claims here concern joint conduct of the Companies and Individual Defendants, as each Individual Defendant holds a membership interest in the Companies. Accordingly, the claims against the Individual Defendants are related to the bankruptcy proceeding.

Notwithstanding that the claims against the Individual Defendants are related to the bankruptcy proceeding, this court declines to exercise its discretion to transfer the claims to the bankruptcy court. The Ninth Circuit has held that in determining whether to retain jurisdiction of a case that is related to a bankruptcy proceeding, the court should consider "the efficient uses of judicial resources, delay, costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Security Farms v. International Brotherhood of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997). A transfer presents inefficiencies if the claims against the Individual Defendants will ultimately be tried in district court. In this case, the Individual Defendants have a right to a trial by jury of the state law claims asserted against them. Each of the Individual Defendants have stated they will not consent to trial by the bankruptcy court; therefore, the claims against them would ultimately return to the district court. Accordingly, the court denies Blue Sky's motion to transfer claims against all Individual Defendants.

B. Show Cause Motion Against ER1 and Nigro to Bankruptcy Court.

Blue Sky contends the non parties ER1 and Nigro are subject to this court's contempt

authority for allowing the Individual Defendants to dissipate company assets. ER1 and Nigro contend that as non parties to this action, they are not subject to the court's contempt authority.

While the Ninth Circuit has not squarely addressed the issue, other courts have held that bankruptcy court lacks jurisdiction to hear motions for contempt arising out of acts that did not occur in its presence. *In re Hipp, Inc.*, 895 F.2d 1503, 1509-21 (5th Cir. 1990); *In re Lawrence*, 164 B.R. 73, 76 (W.D. Mich. 1993). In this case, this court's orders are the basis of Blue Sky's contempt motion, not orders of the bankruptcy court. Further, Blue Sky's motion asks the court to find that ER1 and Nigro knowingly aided and abetted the Individual Defendants, in order to be subject to the court's contempt authority. Making this determination would require factual and legal findings that could implicate the property of the bankruptcy estate and have collateral estoppel effect on the parties to the bankruptcy proceeding. The bankruptcy court will address any issues of whether any party dissipated the Companies' assets in violation of the bankruptcy stay or that court's orders. This court can take up Blue Sky's contempt motion once the bankruptcy court has acted. Therefore, the pending motion for contempt against ER1 and Nigro needs to be stayed pending resolution of the bankruptcy proceeding.

C. Show Cause Motion Against Sanders

There is a pending motion for contempt against defendant Sanders. Blue Sky has moved the court to transfer the claims as to the Individual Defendants and pending motion for contempt against the non parties ER1 and Nigro. However, Blue Sky did not request transfer of the pending motion for contempt against Sanders. Nonetheless, a determination on this matter could have collateral estoppel effect on the bankruptcy proceeding. Thus, the pending motion for contempt against Sanders needs to be stayed pending resolution of the bankruptcy proceeding.

*Conclusion*

For the reasons stated above, Blue Sky's motion (#115) to transfer its claims against the Individual Defendants to the bankruptcy court, as well as the pending motion for contempt against the non parties ER1 and Nigro, is DENIED. The proceedings against the Individual Defendants are STAYED pending resolution of the bankruptcy proceedings. Based on the court's denial of the motion to transfer claims, all pending motions are denied as moot with leave to refile once the bankruptcy proceeding has been terminated or the parties obtain relief from the automatic bankruptcy stay.

DATED this 22nd day of February, 2010.

JOHN V. ACOSTA
United States Magistrate Judge