IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| BLUE SKY AVGROUP, LLC, a Florida Limited Liability Company, and JOHAN CHARL BRINK, jointly and severally, | Civ. No. 3:09-CV-628-AC |
| | OPINION AND ORDER |
| Plaintiffs, | |
| v. | |
| EPIC AIR LLC, a Delaware Limited Liability Company; AIRCRAFT COMPLETION SERVICES, LLC, a Delaware Limited Liability Company; RICHARD SCHRAMECK; JEFF SANDERS; MICHAEL SHEALY; DOUGLAS KING; DARYL INGALSBE; STEVEN FINDLEY; AND MICHEL LAHAIE, | |
| Defendants. | |

---

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Johan Charl Brink ("Plaintiff") brought, as part of a ten-count multi-party suit, claims for conversion and conspiracy to commit conversion against defendants Steven Findley ("Findley") and Daryl Ingalsbe ("Ingalsbe") (collectively "Defendants") arising out of an agreement to purchase and construct experimental airplanes. Plaintiff and Defendants all purchased "kit" experimental airplanes from Epic Air, LLC ("Epic"). Plaintiff alleges Defendants converted parts from the kit airplane Plaintiff purchased from Epic and the parts are now in Defendants' planes. Counts VI and VIII of Plaintiffs Fourth Amended Complaint ("Complaint") are claims for conversion against Defendants Ingalsbe and Findley, respectively; and Count X alleges Defendants, along with Richard Schrameck ("Schrameck"), another named defendant, conspired to commit conversion.[1] (Plaintiff's Fourth Amended Complaint (hereinafter "Fourth Am. Compl."), ¶ 74-77, 82-85, 89-93 (Docket No. 148).) On the claims at issue in this matter, Plaintiff is seeking monetary damages, pre- and post-judgment interest, and litigation costs.

Before the court now is Defendants' Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(6). Defendants seek to dismiss Counts VI, VIII, and X of the Complaint. According to Defendants, Plaintiff never owned the airplane parts he alleges Defendants converted. Conversely, Plaintiff contends Defendants are both judicially and collaterally estopped from bringing their motion for dismissal. Additionally, Plaintiff requests leave to amend his

---

[1] On January 17, 2012, this court issued a Consent Final Judgment in Plaintiff's favor as to Counts I, II, III, V, and X against Schrameck. As to these counts, Schrameck was ordered to pay Plaintiff $1,383,716.38. Defendants consented to entry of judgment, against Schrameck only and not against Findley or Ingalsbe. Schrameck, through business entities he owned and controlled, had a membership interest of approximately 42% both in Epic and Aircraft Completion Services, LLC, until approximately July of 2009. He was a managing member of both companies.

Complaint to allege he acknowledged completion of the airplane and thus did own the parts at issue in this matter. Plaintiff has not alleged that the parts were included in his airplane. In fact, the contracts attached to his Complaint do not show the parts were ever included in the airplane kit. Even if Plaintiff did allege this fact, the terms of the contract set forth conditions under which Plaintiff would have established legal ownership of the parts. Plaintiff has not alleged he met the explicit terms of the contract that would have given him title and ownership of the parts.

Oral argument on Defendant's motion was heard on October 9, 2012. For these reasons as set forth below, Defendants' Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(6) is granted.[2]

## Background

The following facts are not in dispute. In January of 2007, Plaintiff entered into an Airframe Purchase Agreement ("Purchase Agreement") with Epic to purchase an airframe kit from the company. (Pl.'s Fourth Am. Compl. ¶ 21.) The Purchase Agreement provided for the delivery of an Epic experimental kit airplane frame to Plaintiff, an amateur airplane builder. Exhibit B of the Purchase Agreement provided that the airplane frame consisted of the fuselage, wings, landing gear, engine mount, controls, windshield and side glass, wheels, brakes, seat frames, machine parts, and assembly materials. (Pl.'s Fourth Am. Compl. Ex. C, at 8.)

A second contract, the Completion Assistance Agreement ("Completion Agreement"), was executed contemporaneous to the Purchase Agreement. (Pl.'s Fourth Am. Compl. ¶ 21.) The Completion Agreement provided that Aircraft Completion Services, LLC ("ACS") would assist Plaintiff with completion of the kit airplane. The Completion Agreement specifically

---

[2] The parties have consented to jurisdiction by magistrate in accordance with 28 U.S.C. § 636(c)(1).

called for completion, certification of airworthiness, and delivery of the airplane from Epic to Plaintiff in Bend, Oregon. Together, the Purchase Agreement and Completion Agreement required Plaintiff to pay a total of $1,383,716.38 to Epic prior to the airplane being completed and delivered. Plaintiff made prepayments totaling the required amount.

Defendants in this matter each also entered into a Purchase Agreement with Epic and a Completion Agreement with ACS for the completion and delivery of similar kit airplanes. Each party expected his contracts would result in the purchase of a kit airplane frame, mechanical parts to turn the frame into a functioning aircraft, and assistance from ACS to complete the kit airplane.

Plaintiff's claims against Defendants arise out of his contractual relationship with ACS. To date, Plaintiff has not received a completed Epic kit aircraft from ACS. Plaintiff alleges Defendants converted parts from his airplane when they removed the parts from Plaintiff's plane and installed them in their own airplanes. (Pl.'s Fourth Am. Compl. ¶ 91.) Plaintiff alleges that in April or May of 2009, Defendants converted parts belonging to Plaintiff's airplane; specifically, a Pratt Whitney PT6-67A ("Pratt Whitney") engine, tach generators, and avionics. Plaintiff alleges that his airplane was "looted" following completion and prior to delivery to Plaintiff. (Pl.'s Fourth Am. Compl. ¶ 29.) Plaintiff contends the parts at issue were initially installed in his airplane, removed when his airplane was looted, and are now in Defendants' planes. Plaintiff alleges Ingalsbe converted to his own use the Pratt Whitney engine and that the engine is now in Ingalsbe's plane. Plaintiff alleges Findley converted to his own use the tach generators and avionics and those parts are now in Findley's plane. Plaintiff further alleges Defendants conspired with Schrameck to divert Plaintiff's airplane parts to Defendants' planes. (Pl.'s Fourth Am. Compl. ¶ 90.)

*Legal Standard*

I.    FED. R. CIV. P. 12(b)(6)

Rule 8(a) governs pleadings, and provides that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a) (2009). The Supreme Court addressed this pleading standard in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). The Court explained the need for including sufficient facts in the pleading in order to provide proper notice of the claim and the basis on which it rests: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545 (brackets omitted). Still, the Court explained, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).). Although *Twombly* was an antitrust case, the Court has since made clear the pleading standard set forth in *Twombly* is generally applicable to all cases governed by the Federal Rules of Civil Procedure. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court in *Ashcroft v. Iqbal* discussed two principles central to the *Twombly* decision. First, although the court must assume all facts asserted in a pleading are true, it need not accept as true any legal conclusions set forth in a pleading. Second, the complaint must set forth a plausible claim for relief, rather than merely a possible claim. On that point, the Court explained: "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The Court concluded that, "[w]hile legal conclusions

can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 664. Under FED. R. CIV. P. 12(b)(6), dismissal for failure to state a claim is proper only when it appears to a certainty Plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984)

In this case, Plaintiff attached the Purchase Agreement and the Completion Agreement as exhibits to the Complaint. When documents are attached to a complaint, the court can consider the attachments as part of the complaint itself when determining whether the nonmovant can prove facts to support his claim that would be sufficient to defeat a 12(b)(6) motion for dismissal. "If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) (internal citation omitted).

II.    Leave to Amend

Rule 15 governs amendments to pleadings, and states, in relevant part, that where a party has already been served with a responsive pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(1)-(2) (2012). The standard applied to motions for leave to amend is a liberal one. *Amerisource Bergen Co. v. Dialysis West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Even so, "a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue

delay in litigation; or (4) is futile." *Id.* Furthermore, "[w]here the plaintiff has previously filed an amended complaint . . . the district court's discretion to deny leave to amend is 'particularly broad.'" *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004) (citing *Chodos v. West Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (citation omitted)).

### Discussion

Before reaching the merits of the motion to dismiss, there are two preliminary matters the court must address.   First, Defendant requests judicial notice of the prior bankruptcy proceedings.  Second, Plaintiff argues Defendants are collaterally and judicially estopped from bringing the motion for dismissal on the conversion claims.

I.    Judicial Notice

FED. R. EVID. 201(b) provides the court may judicially notice two categories of facts that are "not subject to reasonable dispute."  A fact may be judicially noticed if it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b)(1)-(2) (2011).  The subject documents meet these requirements:  they are part of an official court file kept by the Bankruptcy Court in this District and their accuracy cannot reasonably be questioned -- and in fact has not been here.  Thus, the court takes judicial notice of the three filings and the Order from the prior bankruptcy proceeding.  (Harris Decl. Ex. 1-4, June 12, 2012.)

II.    Collateral Estoppel

Plaintiff contends collateral estoppel bars Defendants from litigating ownership of the airplane parts because the issue was decided in the bankruptcy proceeding.  Plaintiff argues because Defendants were creditors in the consolidated bankruptcy proceedings, they previously

litigated the issue on which they now move to dismiss: Whether ACS or the purchasers of the airplanes, including Plaintiff and Defendants, owned "the partially completed airplanes, the parts on those planes and the parts needed to complete those planes." (Pl.'s Opp'n. Mot. Dismiss 8). Plaintiff explains a motion was filed by the trustee during the bankruptcy proceeding to approve an auction of most of the companies' assets, including airplane parts and accessories that the creditors claimed were actually theirs. The bankruptcy court agreed the creditors did own the airplanes and the airplane parts.

Plaintiff contends because the creditors had objected to the motion to auction off the airplanes and the parts on the ground, the parts belonged to the creditors rather than to the airplane company debtors, and Defendants cannot now argue the parts at issue here did not belong to Plaintiff. Plaintiff's argument is not supported by the bankruptcy proceeding record. The doctrine of collateral estoppel, alternatively known as issue preclusion, bars parties from re-litigating issues already decided "in previous litigation between the same parties." *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992). For re-litigation of an issue to be precluded under this doctrine, three elements must be met:

> (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action."

*Id.*

Plaintiff's Complaint does not allege facts sufficient to meet the first element. The creditors argued in the bankruptcy proceeding the airplanes and airplane parts as a whole belonged to the creditors rather than to the debtors. At no time in the bankruptcy proceeding did Defendants allege the parts at issue in this case belonged to Plaintiff. The bankruptcy court did not reach the issue of who owned specific airplane parts, and for the airplane parts specific to this

conversion action, ownership is of central importance. The bankruptcy court allowed creditors to tag airplanes and parts that remained on Epic's premises, therein asserting ownership to the airplanes and parts. The judge then resolved that the creditors, not Epic, owned the tagged items. Plaintiff's parts were not on the property and did not go through the tagging process. The bankruptcy court never reached the issue of who owned Brink's airframe kit, any parts currently or formerly installed on his airplane, or any airplane parts specified in the Completion Agreement. The issue in this matter is not identical to any issue litigated during the bankruptcy proceeding, and collateral estoppel does not apply to bar Defendants' arguments here.

III.    Judicial Estoppel

Plaintiff also contends judicial estopped bars Defendants from asserting the airplane parts in question do not belong to him. The United States Supreme Court has held certain factors may trigger judicial estoppel, though the court noted the factors "do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001).

The Court nevertheless set forth three factors that "typically inform the decision whether to apply the doctrine." *Id.* The factors are: (1) the party's later position must be "clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750-1 (internal quotations omitted).

With respect to the first factor, Plaintiff challenges Defendants' argument that Plaintiff does not own the parts because he never received a Completion Notice. Plaintiff contends Defendants argued in the bankruptcy proceeding that the amateur builders owned the partially completed planes and the parts needed to complete them, and they cannot now argue he did not own all the parts to his airplane. In support of his request for judicial estoppel, Plaintiff offers portions of "The Certain Creditors' Objection to Trustee's Motion for Orders Authorizing Auction, Approving Bidding Procedures, Approving Purchase Agreement or Overbid, and for Related Relief, Consolidated Bankruptcy Proceeding Docket No. 269." (Elken Decl. Ex. 1, June 29, 2012.)

The creditors, who included Defendants,[3] presented this document during the bankruptcy proceeding, and Plaintiff contends it is clearly inconsistent with Defendants' current position. The relevant portion of the motion reads: "The Trustee Should Not Be Permitted to Sell Assets that Are Not Property of the Estate under the APA . . . Upon information and belief, a substantial part of all the personal property, parts, aircraft accessories, etc., currently located in the facility, belongs to the builders." (Pl.'s Opp'n. Mot. Dismiss 12.) This language refutes Plaintiff's argument that Defendants are taking an inconsistent position. As the bankruptcy motion shows, the collective creditors argued *a substantial amount* of the airplanes and parts on ACS's and Epic's property belonged to the amateur kit airplane builders. Defendants, as part of this larger collective, did not at any point attempt to argue Plaintiff owned all of the parts he is now claiming, nor that any of Plaintiff's airframe kit or airplane parts were included in that "substantial amount." Defendants' position in the bankruptcy proceeding was general and

---

[3] Defendant Ingalsbe participated in the bankruptcy proceeding through his company Independent Technologies Inc.

nonspecific, and did not include the issue in dispute here, namely, ownership of these identified parts. Accordingly, Plaintiff is unable to satisfy the first prong of judicial estoppel by showing Defendants previously took a clearly inconsistent position.

Because Plaintiff has failed to establish the first factor for judicial estoppel, the court need not reach the second and third requirements, but briefly references them here to fully explain the denial of judicial estoppel to these claims. As no prior court found Plaintiff to have ownership or possessory interest in these airplane parts, there is no misleading of either this court or the bankruptcy court. Additionally, the court does not find Plaintiff is seeking to assert an inconsistent position here. Accordingly, Plaintiff's request for the court to invoke the doctrine of judicial estoppel is denied.

IV.    Counts VI and VII:  Conversion Claims

Plaintiff alleges Ingalsbe converted Plaintiff's engine and the engine is now in Ingalsbe's airplane. Plaintiff alleges Findley converted his plane's tach generator and the avionics, and the parts are claimed now to be in Findley's airplane. To maintain a plausible claim for conversion against each Defendant under Oregon law,[4] Plaintiff must plead he had actual possession or the right to possession of the airplane parts and Defendants intentionally exercised control over the parts, which resulted in a substantial interference with Plaintiff's right to the parts. *See Oregon Bank v. Fox*, 73 Or. App. 612, 615 (1985).

Plaintiff argues the allegations in the Complaint are sufficient, because a plaintiff who brings a conversion action need not allege actual ownership of the chattel; rather, "at least a possessory interest" at the time of the alleged conversion is sufficient. *Genova v. Johnson*, 213 Or. 47, 52 (1958). The court agrees that a possessory interest in the airplane parts would be

---

[4] There is no dispute that Oregon law applies to Plaintiff's claims in this case.

sufficient here.  However, Plaintiff's documentation attached to the Complaint shows Plaintiff had no legal possessory interest in the contested parts.

Plaintiff need not plead absolute ownership of the airplane parts in order to prevail on his conversion claim, but he must have had possession or a right to possession of these chattels at the time of the conversion.  *Hunt v. First Nat'l Bank*, 102 Or. 398, 399 (1921).  The issue in this matter, then, is whether Plaintiff had actual possession, or a right to such possession, of the engine, tach generators, and avionics at the time Defendants took possession of the parts. Whether Plaintiff can show a right to possession of the parts hinges on the contracts that govern the sale and completion of the kit airplane:  the Purchase Agreement and the Completion Agreement.

Although Plaintiff's conversion allegation is a tort claim, the court also looks to contract law here, as the Purchase Agreement and Completion Agreement are the contracts that govern the sale of the kit airplane from Epic to Plaintiff, and the completion of the plane by ACS.  To state a claim for the conversion tort, Plaintiff must show that he had possession or a right to possession of the airplane parts at issue in this case.  *Hunt*, 102 Or. at 399.

The court agrees with Defendants that OR. REV. STAT. Chapter 72, "Sales," governs this contract issue.  While it is true the Purchase Agreement and Completion Agreement provide for both goods and services, the Oregon Supreme Court views the sale of an airplane as "goods" even though included as part of the sale is a service, such as an inspection to ensure airworthiness as provided in the Completion Agreement.  *See Lanners v. Whitney*, 247 Or. 223, 232-33 (1967).  Hence, the determinative issue with respect to Plaintiff's possessory interest in the parts is governed by the Purchase Agreement and Completion Agreement, and by OR. REV.

STAT. Chapter 72, which Plaintiff attached to his Complaint. The court now considers these contracts in tandem with the Complaint itself.

The Completion Agreement governs Plaintiff's possessory interest in the parts, because that contract specifically defines when Plaintiff acquires a possessory interest. Plaintiff executed the Purchase Agreement with Epic and, as did all other purchasers, agreed to complete construction of the kit (making it a functioning airplane) via the Completion Agreement with ACS. Defendants entered into similar agreements, and all parties expected to receive completed airplanes as a result of the agreements each entered into with Epic and ACS. Plaintiff's Purchase Agreement is accompanied by an attached Completion List which appears as "Exhibit B to Airframe Purchase Agreement." (Pl.'s Fourth Am. Compl. Ex. C, at 8.) Defendants each also have a Completion List attached to their agreements with Epic, though there are material differences between Plaintiff's and Defendants' Completion Lists.

Each Defendant's List is attached to his Completion Agreement, rather than to his Purchase Agreement, and appears as "Exhibit B to Aircraft Completion Agreement." (Defs.' Reply Ex. A, at 11, 19.) Each Defendant's List specifically contains a Pratt Whitney PT6-67A engine, and an avionics package.[5] These, of course, are the same types of parts Plaintiff claims were converted from his own aircraft.

Plaintiff's Completion List itemizes the main components of his EPIC Airframe Kit. Missing from that list are the key parts which are disputed in this case – a Pratt Whitney engine and avionics. Some of the items on each of the three parties' Lists are the same, such as windows, windshield, brakes, wheels, and a six-seat interior setup. However, Defendants' Lists

---

[5] Co-Plaintiff Blue Sky, LLC's Completion List also explicitly provides for these parts. Blue Sky, LLC is not included in the claims at issue on this motion for dismissal.

quite notably include the engine and the avionics, while these parts are absent from Plaintiff's List. Plaintiff alleges in the Complaint that he did own these items and Defendants converted them to their own use, but the Complaint – via the attached Agreements – fails to show Plaintiff's kit airplane ever included a Pratt Whitney Engine or avionics. In sum, Plaintiff's Agreements, in stark contrast to Defendants' Agreements, do not include either the Pratt Whitney engine or any other engine, nor does it include avionics.

Even assuming Plaintiff can show he participated in some other transaction with Epic or ACS through which he purchased the Pratt Whitney engine, the tach generators, and the avionics, the Complaint still fails to show Plaintiff had sufficient possessory interest over the parts to recover those parts in a conversion action. On this point, the court first looks at the relevant portion of Chapter 72. Oregon law provides, in part:

> Where a third party so deals with goods which have been identified to a contract for sale as to cause actionable injury to a party to that contract *[a] right of action against the third party is in either party to the contract for sale who has title* to ... the goods; *and if the goods have been ... converted a right of action is also in the party who either bore the risk of loss under the contract for sale* or has since the injury assumed that risk as against the other."

OR. REV. STAT. § 72.7220(1) (emphasis added).

Section 5(c) of Plaintiff's Completion Agreement provides:

> "Title to the EPIC Airframe Kit shall remain at all times with AB.[6] Title to all equipment and parts installed into the EA Airframe Kit and the risk of loss or damage regarding same, shall pass from ACS to AB when AB acknowledges that the EPIC is complete, and simultaneously AB shall take possession of AB's EPIC."

(Pl.'s Fourth Am. Compl. Ex. D, at 3.)

---

[6] AB is the term used throughout the Completion Agreement to refer to "Amateur Builder," which refers to the purchaser of the kit aircraft. The Amateur Builder in Plaintiff's agreement is, of course, Plaintiff.

Here, the Completion Agreement provides that title and risk of loss to the parts remained with ACS and would not pass to Plaintiff until the airplane was completed; acknowledged completed by Plaintiff; and Plaintiff had taken possession of the airplane. Under § 5(c) of the Completion Agreement, Plaintiff always had title to the airframe kit, but title to all equipment & parts installed into the airframe kit -- such as an engine, tach generator, or avionics -- as well as the risk of loss regarding the equipment and these parts will pass to Plaintiff only if he acknowledges completion.

The court next addresses the completion prong.  Section 5(b) of the Completion Agreement specifies how completion occurs:  After the kit airplane is completed, ACS delivers a written "Completion Notice" to Plaintiff.  (Pl.'s Fourth Am. Compl. Ex D, at 3.)  Plaintiff then has fifteen business days to do one of three things:  inspect the plane for completion and notify ACS in writing he agrees the aircraft is complete; inspect the plane for completion and provide ACS with a "punch list" identifying items that need to be added or replaced before the aircraft is airworthy; or do nothing, and after the fifteen business-day period tolled is deemed to have acknowledged completion.  Thus, Plaintiff has a cause of action for conversion against Defendants if he has title to the parts or if he bore the risk of loss under his Agreements. Plaintiff does not allege he ever received a written Completion Notice.  Plaintiff attached the Purchase Agreement and the Completion Agreement to his Complaint, but he has not provided the court with any documentation to show the parts at issue in this matter were part of the plane he contracted to have built, nor any documentation showing he ever received a Completion Notice, an instrument by which title and risk of loss -- the properties requisite to having contractual possessory interest in the parts -- ever passed to him.

Plaintiff alleged at oral argument he has a legally cognizable possessory interest in the parts because he formerly had actual possession: Plaintiff alleges the parts were first installed in Plaintiff's plane before they were subsequently installed in Defendants' planes. However, actual possession is not legal possession under Plaintiff's Completion Agreement which, explained above, provides how Plaintiff secures sufficient possessory interest to bring a conversion action. Title and risk of loss must pass from Epic to Plaintiff as specified in Sections 5(b) and 5(c) of the Completion Agreement. Plaintiff did not acquire a possessory interest in any airplane parts that were installed on his plane and then removed prior to his receiving a Completion Notice from ACS.

It is worth restating that each party to this suit entered into a separate agreement with Epic and with ACS. Had Plaintiff entered into an agreement similar to Findley's, his argument that he acquired possessory interest in the parts because they were installed on his plane would be more compelling. Section 5(c) of Findley's Completion Agreement reads: "Title to all equipment and parts installed into the EA Airframe Kit, and the risk of loss or damage regarding same, shall pass from ACS to AB when said parts and components are purchased, installed or applied." (Russillo Decl. Ex. A at 6, July 16, 2012.) Plaintiff has failed to allege he acknowledged completion of the airplane per the requirement found in his own binding Completion Agreement, which does not provide for possessory interest through installation of parts.

Plaintiff correctly points out that under Rule 8(a)(2) and *Twombly* a complaint "need not include 'detailed factual allegations' and rather it need allege 'enough facts to state a claim for relief that is plausible on its face.'" (Pl.'s Opp'n. Mot. Dismiss 2) (quoting *Twombly*, 550 U.S. at 555, 570.) The court finds the Complaint fails to meet this standard. Plaintiff has not presented

facts in his Complaint to support a facially plausible claim that he had a legally cognizable possessory interest in the parts.  His Completion Agreement sets forth the requirements for transferring possessory interest of Plaintiff's completed aircraft to him from ACS.  Plaintiff has not alleged his contracts with ACS and Epic provide that the parts were included in his finished airplane, that he received a Completion Notice for the aircraft, nor that he has supporting documentation to these effects.  For the reasons set forth above, Plaintiff cannot prevail on a conversion action for chattels in which he had no possessory interest in the first place.  Accordingly, Defendants' Motion to Dismiss Counts VI and VIII of the Complaint is granted.

V.     Count X:  Conspiracy Claim

The Complaint also fails to state a claim for civil conspiracy.  The elements of that tort are: "(1) Two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof."  *Bonds v. Landers*, 279 Or. 169, 174 (1977).

The first element is satisfied in this case as Plaintiff alleges three individuals; Ingalsbe, Findley, and Schrameck, conspired to convert his airplane parts.  Turning to the second element, though Plaintiff alleges few facts as to this Count, he does provide some factual support for his conclusion that Defendants conspired with Schrameck to convert the parts:  Plaintiff alleges "Ingalsbe [and] Findley . . . removed these parts from the airframe belonging to Plaintiff for which it had refitted, and, thereafter, placed such equipment on their own aircraft."  (Pl.'s Fourth Am. Compl. ¶ 91.)   The second element is satisfied.  As to the third element, Plaintiff does allege facts to indicate Defendants took his airplane parts.  Still, Plaintiff does not allege an implicit or explicit agreement between Schrameck, Findley, and Ingalsbe, or that such an

agreement existed for the purpose of converting Plaintiff's airplane parts. Consequently, Plaintiff's Complaint fails to establish a meeting of the minds necessary to state a claim for civil conspiracy. Although Plaintiff alleges an unlawful act, the court finds no meeting of the minds pleaded. Consequently, the court need not address the last two elements.

Finally, "the primary purpose of a conspiracy must be to cause injury to another." *Bonds*, 279 Or. at 174. Plaintiff fails to allege Defendants acted for the purpose of causing injury to Plaintiff. Count X of Plaintiff's Complaint is dismissed.

VI.    Leave to Amend the Complaint

At oral argument on Defendants' Motion to Dismiss, Plaintiff's counsel stated that if allowed the opportunity to amend, Plaintiff would plead the precedent condition. Specifically, Plaintiff's attorney Marjorie Elken stated:

> Your Honor, defendants say we can't allege facts saying that we got the notice and that we sent written acknowledgment before 15 days passed. I don't understand where they're getting the idea that we can't do that. Not only can we, but we said in our documents that we would if allowed to amend.

(Rough Draft Tr. 30:5-10, October 9, 2012.) Because the court has determined receipt of a Completion Notice from ACS is necessary to establish a claim for conversion, Plaintiff's Fifth Amended Complaint should allege he did in fact receive the Completion Notice. Accordingly, the court grants Plaintiff's request for leave to amend his Complaint to allege he received the requisite Completion Notice as required by the express terms of Section 5(c) of the contract.

The court reiterates it has determined Section 5(c) of the contract expressly requires Plaintiff *must have received* the Completion Notice before the process of acknowledging completion can begin. In fact, the court concluded Plaintiff's receipt of the Completion Notice from ACS is a condition precedent to taking title and acquiring a

possessory interest in the airplane parts. Without such an interest in the parts, Plaintiff is unable to state a claim for conversion arising out of his contract with ACS. Thus, Plaintiff's Fifth Amended Complaint should comport with the pleading requirements of Rule 9(c).[1] *See* FED. R. CIV. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. . . .").

*Conclusion*

Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) is GRANTED and counts VI, VII, and X are dismissed without prejudice. Plaintiff's request to for leave to amend the Complaint Pursuant to Rule 15 is GRANTED. Plaintiff is directed to file an amended Complaint in accordance with this court's decision on or before December 12, 2012.

IT IS SO ORDERED.

DATED this 29th day of November, 2012.

JOHN V. ACOSTA
United States Magistrate Judge

---

[1] The court is aware the pleading requirements of Rule 9(c) are not mandatory. *See, e.g, Kiernan v. Zurich Co.*, 150 F.3d 1120, 1124 (9th Cir. 1998) ("But Rule 9(c) does not expressly require that performance of conditions be pled, it merely sets forth the manner in which such pleadings should be made."). Nevertheless, under the circumstances of this case, an allegation by Plaintiff that he received the Completion Notice is required in order to avoid another dismissal under Rule 12(b)(6) for failure to state a claim.